**FILED**

Apr 19 2021

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMOS JONES,

        Plaintiff,

    v.

S. MORA, et al.,

        Defendants.

Case No. 20-cv-04093-TSH

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT; STAYING ACTION AND REFERRING FOR SETTLEMENT PROCEEDINGS; DIRECTIONS TO CLERK**

Re: ECF No. 13

      Plaintiff, an inmate at Correctional Training Facility ("CTF"), filed this *pro se* action pursuant to 42 U.S.C. § 1983 against CTF officers Madsen and Mora, alleging that defendant Madsen directed defendant Mora to sexually assault Plaintiff in retaliation for Plaintiff filing a prison grievance against defendant Madsen, in violation of the First Amendment and Eighth Amendment.  Now pending before the Court is Defendants' motion for summary judgment.  ECF No. 13.  Plaintiff has filed an opposition, ECF No. 15, and Defendants have filed a reply, ECF No. 16.  For the reasons set forth below, Defendants' motion for summary judgment is DENIED.

## DISCUSSION

I.    **Background**

      The following facts are undisputed unless otherwise noted.

      On September 19, 2019, defendant Madsen searched Plaintiff's cell and confiscated Plaintiff's legally obtained MP3 player and 10 CDs without providing a cell search receipt for these items.  ECF No. 15 at 18.  Defendant Madsen informed Plaintiff that the cell had been searched because Plaintiff's cellmate was trafficking drugs and that the search was unrelated to Plaintiff.  ECF No. 5, 2:15-2:16; ECF No. 1-1 at 6, 8.  Plaintiff then asked why defendant Madsen had confiscated his MP3 player and CDs.  Defendant Madsen responded that she didn't give a

United States District Court
Northern District of California

1   fuck; that as far as she was concerned, the items belonged to Plaintiff's cellmate and Plaintiff

2   should file a grievance about it ("602 it").  ECF No. 5 at 2:18-2:20.

3       On October 11, 2019, Plaintiff submitted a grievance, also referred to as a 602, alleging

4   that defendant Madsen had improperly searched his cell and confiscated his property.  ECF No. 1-

5   1 at 6-9.

6       On November 23, 2019, defendant Madsen stopped Plaintiff as Plaintiff was on his way to

7   the recreational yard.  Defendant Madsen shouted at Plaintiff, "You want to fucking 602 me huh,

8   put your hands on the wall!" ECF No. 15 at 18-19.  Defendant Madsen than called defendant

9   Mora over and said, "This is one of them who have wrote me up, search his ass." ECF No. 15 at

10  18-19.  While conducting the clothed body search, defendant Mora stuck his hands inside

11  Plaintiff's pants and deliberately and repeatedly squeezed Plaintiff's testicles twice for three

12  seconds each, causing him pain.  Plaintiff told defendant Mora, "You are not supposed to search

13  me like that."  Defendant Mora responded, "This is going to keep happening to you if you keep

14  writing my partner up." ECF No. 15-1 at 6 (Pltf. Depo. 40:20-40:23).

15      On November 27, 2019, Plaintiff reported that defendant Mora had sexually assaulted him.

16  In response, that same day, an urgent mental health referral chrono was issued and Plaintiff was

17  evaluated by a staff psychologist.  ECF No. 15-1 at 8-9.  The staff psychologist assessed Plaintiff's

18  suicide/self-harm risk level as low.  The staff psychologist noted that Plaintiff did not wish to

19  discuss the incident, appearing irritated and mumbling that nothing was likely to come of his

20  report anyway.  ECF No. 15-1 at 9.

21      On December 19, 2019, Plaintiff sought mental health treatment related to the November

22  23, 2019 body search.  ECF No. 15 at 19.  He was interviewed by a social worker and he told her

23  that he had been coerced into signing a 128C that his allegation of staff sexual misconduct was

24  unfounded.  ECF No. 15-1 at 10.  Plaintiff refused further follow-up mental health services, stating

25  that he did not want to speak about the incident again but would instead "bury it because [he

26  didn't] want to feel this way any longer."  ECF No. 15-1 at 10.

27      Defendants retaliated the following day, December 20, 2019, by placing Plaintiff in

28  administrative segregation, in an effort to silence him.  ECF No. 15 at 19.  Plaintiff was retained in

1 administrative segregation until March 19, 2020.  ECF No. 15-1 at 13.

2        Neither defendant directly disputes the above allegations.  Defendant Mora states that he

3 has no recollection of Plaintiff or of the November 23, 2019 body search of Plaintiff.  ECF No. 13-

4 1 at 2.  Defendant Mora states that, at various points during 2019, he was stationed in a corridor of

5 the prison and would randomly pat down inmates as they left their cells for the prison exercise

6 yard, searching as many as ten inmates a day.  The searches are conducted in order to ensure that

7 inmates are not smuggling weapons or other contraband onto the yard.  The searches include a

8 brief search of the inmate's groin area.  ECF No. 13-1 at 2.  Defendants note that Plaintiff did not

9 seek medical care for any physical injuries related to the search and that Plaintiff's only interaction

10 with defendant Mora was the November 23, 2019 body search.

11        The correctional officer training manual sets forth the following guidelines for searches of

12 the leg, foot and buttocks area:

13        Starting at the front of the waist using a firm touch, continue searching down the front of
         pants.  Once at the ankle, search around the ankle and foot.  (If pants are rolled up, unroll
14        them to search the bottom of the pants.)

15        Search up the outside of the leg, down the backside (starting at waistline including the
         buttocks), and back up the inside of the leg.
16

17 ECF No. 15-1 at 3. The manual provides the following guidelines for searching the groin, hip, and

18 buttocks area:

19        Right hand beginning on the front right hip pocket, using the palm side of your right hand
         sweep across the front of the hip, across the groin, to left hip pocket.
20        Upon completing the groin sweep, pull your hand through the legs maintaining contact
         with the back of your hand against the inmate's groin and buttocks.

21        **Note**: When searching a male inmate's groin: sweep across the groin region one time only
22        (pocket to pocket) with the palm of your hand.

23        *__Male Inmates__*: Sweep the groin to check for contraband.  DO NOT SQUEEZE THE
         INMATE'S SCROTUM.

24 ECF No. 15-1 at 3 (emphasis in original).  The manual further specifies that while the search

25 should be done for each side of the body in the same manner, the groin sweep should be done only

26 once.  ECF No. 15-1 at 4.

27 **II.      Summary Judgment Standard**

28        Summary judgment is proper where the pleadings, discovery and affidavits show that there

is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in that party's favor. *AXIS Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840, 844 (9th Cir. 2020). If, as to any given material fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the Court must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013). However, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017).

//

//

//

III.     **Summary Judgment Motion**

     A.      **First Amendment Claim – Retaliation**

          1.      **Legal Standard**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence).

The adverse action in the first element of a retaliation claim need not independently deprive the plaintiff (prisoner or not) of a constitutional right.  *See, e.g., Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977) (absence of right to continued employment does not defeat claim for retaliatory firing for First Amendment expression); *see also Vignolo v. Miller*, 120 F.3d 1075, 1078 (9th Cir. 1997) (discharge from prison job for refusal to waive constitutional right states claim despite no constitutional right to prison job).  Harm that "would chill a 'person of ordinary firmness' from complaining" is sufficient.  *Shepard v. Quillen*, 840 F.3d 686, 691 (9th Cir. 2016) (quoting *Rhodes*, 408 F.3d at 569) (placement in administrative segregation or even threat to do so amounts to adverse action satisfying first element of retaliation claim).

The second element, causation, requires showing that the prison official intended to take the adverse action out of "retaliatory animus" to "silence and to punish" the inmate, as opposed to for some other reason.  *Shephard*, 840 F.3d at 689-91 (finding genuine issue of material fact as to whether defendant sent inmate to ad seg with intent to (1) follow 15 Cal. Code Regs. § 3335(a) or (2) retaliate for inmate's complaint about staff misconduct).  Evidence probative of retaliatory animus includes proximity in time between the protected speech and the alleged adverse action,

the prison official's expressed opposition to the speech, and the prison official's proffered reason for the adverse action was false or pretextual. *See id.* at 690. Retaliatory motive may also be shown by inconsistency with previous actions, as well as direct evidence. *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003). Mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

Prisoners may not be retaliated against for exercising their right of access to the courts. *See Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995). This constitutional prohibition clearly includes retaliation for filing a complaint. *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). The right of access to the courts extends to established prison grievance procedures. *See Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995). Thus, a prisoner may not be retaliated against for using such procedures. *See Rhodes*, 408 F.3d at 567.

A prisoner must at least allege that he suffered harm, since harm that is more than minimal will almost always have a chilling effect. *Rhodes*, 408 F.3d at 567-68 n.11; *see Gomez v. Vernon*, 255 F.3d 1118, 1127-28 (9th Cir. 2001) (prisoner alleged injury by claiming he had to quit his law library job in face of repeated threats by defendants to transfer him because of his complaints about administration of library). The prisoner need not demonstrate a *total* chilling of his First Amendment rights in order to establish a retaliation claim. *See Rhodes*, 408 F.3d at 568-69 (rejecting argument that inmate did not state a claim for relief because he had been able to file inmate grievances and a lawsuit). That a prisoner's First Amendment rights were chilled, though not necessarily silenced, is enough. *Id.* at 569 (destruction of inmate's property and assaults on inmate enough to chill inmate's First Amendment rights and state retaliation claim, even if inmate filed grievances and a lawsuit).

The prisoner bears the burden of pleading and proving absence of legitimate correctional goals for the conduct of which he complains. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). At that point, the burden shifts to the prison official to show, by a preponderance of the evidence, that the retaliatory action was narrowly tailored to serve a legitimate penological purpose. *See*

6

*Schroeder v. McDonald*, 55 F.3d 454, 461-62 (9th Cir. 1995).  Prison officials cannot simply articulate a general justification for their actions, they must show why their particular action was reasonably related to the legitimate interest.  *Shephard*, 840 F.3d at 692 (defendants must show that they placed plaintiff in administrative segregation because there were witnesses in general population whom he could have improperly influenced; not enough to simply assert that administrative segregation generally helps keep prisoners safe and investigations untainted).  Courts must also consider whether there were ready alternatives to the retaliatory action for achieving the governmental objectives.  *Brodheim v. Cry*, 584 F.3d 1262, 1272 (9th Cir. 2001).

Retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'"  *Pratt*, 65 F.3d at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).  In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."  *Id.* (quoting *Sandin*, 515 U.S. at 482).

## 2.    Analysis

Defendants argue that there is no evidence that the November 23, 2019 search involved adverse action because the search was performed in accordance with the CDCR's Operations Manual which calls for random patdown searches of inmates; because random patdown searches, including the November 23 search, have the legitimate correctional purpose of ensuring that inmates are not smuggling contraband or weapons onto the exercise yard; defendant Mora has found a variety of contraband during random patdowns; and there was no chilling effect because neither defendant has had any contact with Plaintiff since the November 23 search.  ECF No. 13 at 12-15.

Plaintiff argues that there is a genuine issue of material fact as to retaliatory motive in that he has presented evidence via his declaration that Defendants knew of his protected activity, Defendants expressed dislike for Plaintiff engaging in that protected activity, and Defendants searched him because of that protected activity.  Plaintiff notes that neither defendant has disputed his statements and that no contraband was found as a result of the November 23 search.  Plaintiff

United States District Court
Northern District of California

alleges that Defendants have a pattern of conducting sexually invasive clothed body searches in order to retaliate against prisoners who file grievances and as a result of the volume of complaints against Defendants, they have been transferred to a position where they have limited contact with inmates.  ECF No. 15 at 8-10.  Plaintiff states that these actions have had a chilling effect on his First Amendment rights as defendant Mora threatened him that he would be sexually assaulted again if he filed any further complaints against defendant Madsen.  ECF No. 15 at 19.

It is undisputed that Plaintiff's October 11, 2019 grievance constitutes protected conduct. *See Bradley*, 64 F.3d at 1279; *Rhodes*, 408 F.3d at 567.  As to the remaining four elements required for a retaliation claim, the Court finds that, viewing the facts in the light most favorable to Plaintiff and resolving all factual disputes in favor of Plaintiff, there are triable issues of material fact.  At the summary judgment stage, the Court must assume the truth of the evidence set forth by Plaintiff which is as follows: (1) that the patdown search was preceded by defendant Madsen telling Plaintiff, "You want to fucking 602 me huh, put your hands on the wall," and telling defendant Mora, "This is one of them who have wrote me up, search his ass," (2) that the patdown search was inconsistent with the officer training manual in that defendant Mora swept the groin area twice and squeezed Plaintiff's testicles; and (3) after the search when Plaintiff told defendant Mora that he should not have been searched in that manner, defendant Mora responded, "This is going to keep happening to you if you keep writing my partner up."  A reasonable jury could infer from Plaintiff's evidence that defendant Madsen ordered defendant Mora to sexually assault Plaintiff in order to retaliate against Plaintiff for filing a grievance against defendant Masden and to discourage Plaintiff from filing future grievances against defendant Masden. While patdown searches may be required by prison policy and have a legitimate correctional purpose, if Defendants used the patdown search as a cover to retaliate against and intimidate Plaintiff, as can be reasonably inferred from Plaintiff's evidence, Defendants cannot assert that the patdown search served a valid penological purpose.  *See Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) ("prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, where there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right.");

*see also Shepard*, 840 F.3d at 692 (general justification for challenged action insufficient to prove reasonable relation to legitimate penological interest; must show why that particular action was reasonably related).

At the summary judgment stage, the Court does not engage in credibility determinations or weigh the evidence, as those are functions reserved for the jury. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)) (alterations in original). Because there is a triable issue as to whether the November 23, 2019 patdown search was, as Plaintiff argues, sexual assault in retaliation for his filing a grievance, or, as Defendants argue, a random patdown for the legitimate correctional purpose of searching for contraband, there are therefore triable issues of fact as to the remaining four elements of a First Amendment retaliation claim: whether the patdown was an adverse action; whether the patdown was because of the October 11, 2019 grievance; whether the patdown chilled Plaintiff's First Amendment rights; and whether the patdown advanced a legitimate correctional goal. Defendants are not entitled to summary judgment on the First Amendment retaliation claim unless they are entitled to qualified immunity.

### B.      Eighth Amendment Claim – Sexual Assault

#### 1.      Legal Standard

A prisoner may state an Eighth Amendment claim under Section 1983 for sexual harassment if the alleged sexual harassment was sufficiently harmful, i.e., a departure from "the evolving standards of decency that mark the progress of a maturing society," and the defendant acted with intent to harm the prisoner. *See Thomas v. District of Columbia*, 887 F. Supp. 1, 3-4 (D.D.C. 1995) (citing *Hudson v. McMillian*, 503 U.S. 1, 6, 8 (1992)) (internal quotations and citation omitted). When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated, *see Hudson*, 503 U.S. at 9, and no lasting physical injury is required to state a cause of action, *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000). Sexual assault, coercion and harassment certainly may violate contemporary standards of decency and cause physical and psychological harm. *See Jordan v. Gardner*, 986 F.2d 1521, 1525–31 (9th Cir. 1993) (en banc). "A prisoner presents a viable Eighth Amendment

claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020).

### 2.    Analysis

Defendants argue that they are entitled to summary judgment for the following reasons. Defendant Mora's contact with Plaintiff's testicles during the clothed body search was incidental to a legitimate full-clothed body search because the CDCR's training materials call for an officer to sweep across the groin region once with the palm of the hand; the three second contact was brief and minimal and therefore not repugnant to the conscience of mankind; and Plaintiff went to the yard after the contact and never sought medical treatment for physical injuries.

Plaintiff argues that defendant Mora's contact with his testicles violated the Eighth Amendment because it was contrary to the protocol in the training manual which specifies that correctional officers should not squeeze the inmate's scrotum and should only pass the groin area once; because Defendants have a pattern of using clothed body searches to sexually assault and retaliate against inmates who utilize, or threaten to utilize, the prison grievance system; that squeezing an inmate's testicles does not serve a legitimate correctional purpose because the objective can be achieved by "cupping" or patting down the groin, as the training manual instructs; and the search was instigated by defendant Madsen with retaliatory intent.

Defendants' arguments rely on the Court crediting their version of events.  However, at summary judgment, the Court must assume the truth of the evidence presented by Plaintiff and make all reasonable inferences therefrom, *Mellen v. Winn*, 900 F.3d 1085, 1102 (9th Cir. 2018), which is that (1) the patdown search was conducted to retaliate against and intimidate Plaintiff and not to search for contraband; (2) during the search, defendant Mora twice squeezed Plaintiff's testicles, in contravention of the manual's explicit direction to not squeeze the inmate's testicles and to only sweep the groin area once; and (3) defendant Mora squeezed Plaintiff's testicles to cause him pain and humiliation.  Whether Plaintiff sought medical treatment for the sexual assault

is irrelevant because no lasting physical injury is required to state an Eighth Amendment violation;
the only requirement is that the officer's actions be offensive to human dignity. *Schwenk*, 204
F.3d at 1196. There is therefore a triable issue as to whether defendant Madsen directed defendant
Mora to touch Plaintiff in a sexual manner, under the guise of a patdown search, with the sole or
primary purpose of humiliating Plaintiff, in retaliation for Plaintiff filing a grievance. Defendants
are not entitled to summary judgment on the Eighth Amendment claim unless they are entitled to
qualified immunity.

### C.     Qualified Immunity

Defendants argue that they are entitled to qualified immunity because they did not violate
Plaintiff's constitutional rights and because it would not have been evident to a reasonable prison
official that they had violated Plaintiff's Eighth Amendment rights when they made brief and
minimal contact with Plaintiff's testicles during a routine clothed body search or that they had
violated Plaintiff's First Amendment rights by conducting the routine clothed body search because
the search had a legitimate penological purpose and did not involve adverse action.

The defense of qualified immunity protects "government officials . . . from liability for
civil damages insofar as their conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457
U.S. 800, 818 (1982). To determine whether a government official is entitled to qualified
immunity, courts must consider (1) whether the official's conduct violated a constitutional right,
and (2) whether that right was "clearly established" at the time of the alleged misconduct.
*Pearson*, 555 U.S. at 232. Courts may "exercise their sound discretion in deciding which of the
two prongs of the qualified immunity analysis should be addressed first in light of the
circumstances in the particular case at hand." *Id*. at 236. "But under either prong, courts may not
resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v.
Cotton*, 572 U.S. 650, 656 (2014) (per curiam). "An officer cannot be said to have violated a
clearly established right unless the right's contours were sufficiently definite that any reasonable
official in [his] shoes would have understood that he was violating it, meaning that existing
precedent . . . placed the statutory or constitutional question beyond debate." *City and County of*

United States District Court
Northern District of California

United States District Court
Northern District of California

*San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (alteration and omission in original) (citation omitted).  This is an "exacting standard" that "gives government officials breathing room to make reasonable but mistaken judgments by protect[ing] all but the plainly incompetent or those who knowingly violate the law." *Id.* (alteration in original) (internal quotation marks omitted).

It was clearly established at the time of the relevant events that adverse action taken against an inmate for his protected conduct without a legitimate correctional goal violates the First Amendment.  *Rhodes*, 408 F.3d 567-68.  It was also clearly established at the time of the relevant events that a sexual assault on an inmate by a guard is deeply offensive to human dignity and violates the Eighth Amendment.  *Schwenk*, 304  F.3d at 1197.  Defendants' entitlement to qualified immunity requires the Court to accept their version of the relevant events – that the patdown search was routine and that the body search involved brief and minimal contact with Plaintiff's testicles in accordance with established procedure – rather than Plaintiff's version of events – that the patdown search was retaliatory and involved two deliberate squeezes of Plaintiff's testicles intended to retaliate and intimidate.  Because resolution of these factual disputes is critical to a proper determination of Defendants' entitlement to qualified immunity, summary judgment on qualified immunity is inappropriate.  *See, e.g., Glenn v. Washington County*, 673 F.3d 864, 870 (9th Cir. 2011) (denying qualified immunity where genuine issues of fact remained as to whether officers' use of force violated Fourth Amendment).

Because there are triable issues of fact as to whether Defendants violated Plaintiff's First Amendment and Eighth Amendment rights and because these factual disputes preclude a determination of qualified immunity, the Court DENIES Defendants' motion for summary judgment on the First Amendment and Eighth Amendment claims.

### D.    Punitive Damages

Defendants also argue that they are entitled to summary judgment on Plaintiff's claim for punitive damages because there is no evidence that Defendants acted with the necessary evil motive or intent or the necessary reckless or callous indifference to the federally protected rights of others.  This argument also requires the Court to accept Defendants' version of the relevant

events.  Because there are factual disputes as to the purpose and specifics of the body search, Defendants' motion for summary judgment with respect to punitive damages is DENED.

### CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.      Defendants' motion for summary judgment is DENIED.  ECF No. 13.

2.      The case is hereby REFERRED to Magistrate Judge Robert Illman for settlement proceedings pursuant to the Pro Se Prisoner Mediation Program.  Such proceedings shall take place within 120 days of the date this order is filed, or as soon thereafter as Magistrate Judge Illman's calendar will permit.  Magistrate Judge Illman shall coordinate a place, time and date for one or more settlement conferences with all interested parties and/or their representatives and, within fifteen days of the conclusion of all settlement proceedings, shall file with the Court a report thereon.

3.      If the case does not settle, the Court will enter a new scheduling order for further proceedings.

This order terminates ECF No. 13.

**IT IS SO ORDERED.**

Dated: April 19, 2021

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California